**TRENK, DIPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
(973) 243-8600
Richard D. Trenk (RT 6874)
*Attorneys for Debtors and
Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARTERET ARMS, L.L.C., | ) | Case No. 09-31726 |
| | ) | |
| Debtor. | ) | Honorable Morris Stern |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CARTERET ARMS MANAGEMENT, L.L.C., | ) | Case No. 09-31728 |
| | ) | |
| | ) | Honorable Morris Stern |
| Debtor. | ) | |

**VERIFIED APPLICATION IN SUPPORT OF MOTION SEEKING
ENTRY OF AN ORDER (I)(A) APPROVING BIDDING PROCEDURES IN
CONNECTION WITH THE DEBTOR'S SALE OF THE DEBTOR'S REAL
PROPERTY AND INTEREST IN REAL PROPERTY FREE AND CLEAR
OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B)
APPROVING THE FORM AND MANNER OF NOTICE OF SUCH SALE
AND BIDDING PROCEDURES, AND (C) SETTING THE HEARING
DATE IN CONNECTION THEREWITH; AND (II)(A) AUTHORIZING
AND APPROVING SUCH SALE TO THE PURCHASER SUBMITTING
THE HIGHEST AND BEST OFFER, (B) WAIVING THE TEN DAY STAY
PROVIDED BY FED. R. BANKR. P. 6004, AND (C) GRANTING
RELATED RELIEF**

TO:    THE HONORABLE MORRIS STERN
       UNITED STATES BANKRUPTCY JUDGE

Carteret Arms, L.L.C. ("CAL" or the "Debtor"), by and through its undersigned counsel,

Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C. ("Trenk DiPasquale"), pursuant to

sections 105(a), 323(a), 363(b), (f) and (m), and 541(a) of title 11 of the United States Code, 11

U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of orders (I)(A) approving

bidding procedures (the "Bidding Procedures") in connection with the Debtor's sale (the "Sale") of

real property located at 333 West State Street in Trenton, New Jersey (the "Property"), free and

clear of all liens,[1] claims, encumbrances and interests; (B) approving the form and manner of

notice of the Sale and Bidding Procedures (the "Sale Notice"); and (C) setting the hearing date in

connection with the Sale (hereafter, the "Bidding Procedures Motion");[2] and (II)(A) authorizing

and approving the Sale to the highest and best offer (the "Purchaser"), (B) waiving the ten (10) day

stay provided by Bankruptcy Rule 6004(h), and (C) granting related relief, and in support thereof

respectfully states:

### <u>INTRODUCTION</u>

1.      The Debtor seeks entry of an order: (1) scheduling an auction sale (the "Auction");

(2) approving the form of the proposed agreement of sale (the "Agreement of Sale") annexed

hereto as **Exhibit A** for the sale of the Debtor's real property free and clear of all liens, claims,

and interests, pursuant to section 363(b), (f), and (m) of the Bankruptcy Code, with all valid

liens, claims, and interests, if any, to attach to the proceeds of sale; (3) authorizing the Debtor to

solicit bids for the sale of the Property; (4) approving competitive bidding procedures related

thereto; (5) scheduling a hearing date to approve the sale (the "Sale Hearing"); (6) approving the

form, manner and sufficiency of notice of the Sale Hearing; (7) approving the sale of the

Property a  qualified bidder at the hearing determined by the Debtor to be the highest and best

offer pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004; and (8)

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement of Sale (as defined herein).

[2] Concurrently herewith, the Debtor has filed an application for order shortening time for an initial hearing to consider the relief requested in the Bidding Procedures Motion.

granting related relief (the "Motion").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the

District Court General Order of Reference dated July 23, 1984.  This is a core proceeding under

28 U.S.C. § 157(b).

3.      Venue of this case and this Motion in this judicial district is proper under 28 U.S.C.

§§ 1408 and 1409.

4.      The statutory bases for the relief sought by the Motion are sections 105(a), 323(a),

363(b), (f) and (m), 365(a) and 541(a) of the Bankruptcy Code.

5.      Such sale shall be free and clear of liens, claims, interests, encumbrances, any

options on the Property and purchase contracts.

## BACKGROUND

6.      On August 19, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of New Jersey.

7.      On August 24, 2009, this Court entered an order providing for the joint

administration of CAL and Carteret Arms Management, L.L.C. ("CAM") (collectively, the

"Debtors") the respective chapter 11 cases.

8.      The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No

trustees, examiners, or creditors committees have been appointed in these jointly administered

cases.[3]

---

[3] It should be noted that Debtor CAM is not an operating entity, but rather a holding company of the equity in CAL.

**The Debtor's Business, Structure, And Operations**

9.     CAL is a limited liability company of the State of New Jersey.  Carteret Arms

Management, L.L.C. ("CAM")  is the sole member of CAL.  David Connolly ("Connolly") is the

sole manager of both CAL and CAM.  CAM is wholly-owned by the Carteret Arms Trust, of

which Connolly is the trustee, as well as one of a number of beneficiaries.

10.     The Debtor and CAM are affiliates of Connolly Properties, Inc. ("Connolly

Properties"), a property management company located in Plainfield, New Jersey.  For years,

Connolly Properties, through its principals David and Donna Connolly, has provided high

quality, affordable rental housing to residents of East Orange, Plainfield, Trenton, and Camden,

New Jersey, as well as Allentown, Pennsylvania.

11.     CAL's sole business consists of owning and operating the Property.  CAL

purchased the property in 2007 for approximately $17,500,000.00.

12.     CAL collected revenue of $2,062,908.00 in the year 2008, and through July 31,

2009, has collected revenue of $1,444,624.00 in the year 2009.

13.     The Debtor does not have employees; rather, all of the Debtor's workers are

employed by Connolly Properties, the management company for the Property.

**Secured Debt**

14.     On October 30, 2007, CAL obtained a $13,000,000.00 loan from New York

Community Bank ("NYCB"), which was evidenced by a promissory note (the "NYCB Note")

that CAL issued to NYCB on that same date.  The NYCB Note provided for an initial[4] interest

rate of six (6%) percent per annum, and a term of ten (10) years.

15.     To secure the loan from NYCB, CAL granted NYCB a first mortgage in the

---

[4] Pursuant to the NYCB Note, the interest rate is to remain at 6% percent until the "first change date," which is on
November 1, 2012.  Upon that time, the interest rate will become the "Prime Rate" plus 2.5 basis points (but with a
mandatory minimum of 6%, and a mandatory maximum of 16%).

Property, as well as an assignment of leases and rents (collectively, the "NYCB Mortgage").

16.    At the same time, CAL also obtained a mezzanine loan from Urban American Capital, L.L.C. ("UAC") in the amount of $1,200,000.00, which was evidenced by a promissory note (the "UAC Note") that CAL issued to UAC on October 30, 2007.  The UAC Note provides for an interest rate of eleven (11%) percent per annum, and is for a term of five (5) years.  The terms of the loan from UAC were further memorialized in a loan agreement between CAL, UAC, CAM, and Connolly (the "UAC Loan Agreement").  CAM and Connolly both executed the UAC Loan Agreement as "limited indemnitors."

17.    In addition to the limited indemnities that UAC received from CAM and Connolly, UAC's loan to CAL was and is secured as follows:

(a)    CAM executed a *Membership Pledge and Security Agreement and Collateral Assignment* in favor of UAC, in which it pledged its membership interest in CAL as security for the loan; and

(b)    Pursuant to a security agreement dated October 30, 2007, CAL granted UAC security interests in, *inter alia*, its rents, leases, insurance claims and proceeds thereof, personal property, fixtures, and future payment rights.

18.    In connection with their respective loans, NYCB and UAC (collectively, the "Lenders") entered into an *Intercreditor Agreement*, in which they agreed, *inter alia*, as follows:

(a)    UAC acknowledged that its interests in CAL's property, collateral, rights, titles, and interests were subordinate to those of NYCB in those same items;

(b)    UAC acknowledged that its rights to receive payment from CAL in connection with its loan (and supporting documents) were subordinate to those of NYCB;

(c)    That in the event of a bankruptcy filing by CAL, UAC could not receive any payment or distribution from CAL until all of CAL's indebtedness to NYCB was paid in full;

(d)    That in the event of a bankruptcy filing by CAL, payments from CAL to NYCB would be paid in the following order: (i) first, to the part of CAL's indebtedness to NYCB that did not represent principal and interest; (ii) next, to the interest on the loan; and (iii) finally, to the principal on the loan; and

(e)     That in the event of a bankruptcy filing by CAL, regardless of the value of NYCB's collateral, UAC would be subordinated to all obligations of CAL to NYCB, including interest accrued both pre- and post-petition.

19.     CAL failed to make its payments under the NYCB Note on April 1, 2009.  CAL was current on the UAC Note as of the Petition Date.

**Events Leading To The Debtor's Bankruptcy Filing**

20.     The Debtor, like so many owners of large rental properties, has been severely affected by the weak economy, and more specifically, the dire state of the multifamily housing market.

21.     Unfortunately, the Property's vacancy rates increased during the past year, leaving CAL unable to cover the debt service on the NYCB Note and UAC Note.  As stated above, after straining for months to make payments, CAL defaulted in its payments under the NYCB Note on April 1, 2009.

**NYCB's Motion For Relief From Stay And Agreement With The Debtor On The Sale Of The Property**

22.     On August 19, 2009, the Debtors made a motion for entry of an order authorizing the use of cash collateral (the "Cash Collateral Motion"), which was objected to by NYCB on the grounds that the rental income received from the Property was not property of the Debtors' estate and that NYCB's liens are not adequately protected.

23.     On October 14, 2009, NYCB made a motion for entry of an order, *inter alia*, vacating the automatic stay so that NYCB could foreclose its mortgage against the Property (the "Lift Stay Motion").  The Lift Stay Motion also included an appraisal by NYCB, dated September 16, 2009, which valued the Property between $13,200,000.00 and $13,600,000.00. *See* Exhibit "B" to the Lift Stay Motion.

24.     The Debtor and NYCB entered into discussions with a view toward resolving the

parties' disputes in connection with the Cash Collateral Motion and the Lift Stay Motion.

25.    Accordingly, on November 30, 2009, NYCB and the Debtor submitted a proposed stipulation and order (the "Stipulation and Order") that provides, among other things, for the following:

- The Debtor shall make a motion before this Court to retain Racebrook Marketing Concepts, LLC d/b/a Sheldon Good and Company ("Sheldon Good") to market and sell the Property through an auction process.    The terms of the retention of Sheldon Good shall be subject to the approval of NYCB.[5]

- NYCB shall have the right to credit bid the amount of the NYCB Claim at the Auction. The Debtor will not contest the extent and validity of NYCB's mortgage lien or the amount of the NYCB claim.

- The Debtor may use the rental income for specific purposes set forth in Exhibit "A" to the Stipulation and Order.

- In consideration for the use of the rental income NYCB will be granted a post-petition first priority security interest on the rental income (the "Post-Petition Lien").  The Post-Petition Lien shall be subordinate only to a carve out for (i) the payment of U.S. Trustee fees in the Debtor's case, (ii) the fees and expenses of Sheldon Good, and (iii) professional fees and expenses in the amount of $50,000.00 in addition to counsels disclosed prepetition retainer.

---

[5] Concurrently herewith, the Debtor has filed an application for the retention of Sheldon Good to market and sell the Property.

26.    The Stipulation and Order also noted that as of October 8, 2009, NYCB was owed

$14,395,754.17 on account of the NYCB Note.[6]

## **RELIEF REQUESTED AND BIDDING PROCEDURES**

27.    In their sound business judgment, the Debtor decided to sell the Property in

furtherance of its restructuring efforts.

28.    In accordance with section 363(b)(1) of the Bankruptcy Code, and Bankruptcy Rule

6004(f)(1), the Debtor seeks to sell the Property at an auction to be conducted by Sheldon Good.

A copy of the Agreement of Sale for the Property is annexed hereto as **Exhibit A**.

29.    The Debtor requests approval of the following bidding procedures, structured with

the objective of obtaining the highest and best offer for the Property:

The Debtor requests approval of the following bidding procedures, structured with the objective

of obtaining the highest and best offer for the Property:

(a)    **"AS IS, WHERE IS":** Any bid shall be a bid to purchase the Property, shall
be on an "AS IS, WHERE IS" free and clear of all liens, encumbrances,
purchase contract, options, interests and claims, whether known or unknown,
choate or inchoate, pursuant to section 363(f) of the Bankruptcy Code. The
Debtor make no representations or warranties whatsoever.

(b)    **Qualification to Bid:** To qualify to participate in the Auction, a bidder must
(i) present at the auction registration a cashier's or certified check in the
amount of $500,000.00 made payable to an escrowee, title company or as
directed by Debtor (the "Deposit")(ii) have (or have its agent) inspected the
Property and (iii) purchase or receive a Bidder's information Packet (as
defined below).

(c)    **Qualified Bidders:**  Any party that qualifies will be a "Qualified Bidder."
Only Qualified Bidders will be permitted to participate in bidding for the
Property at the Auction.  The Auctioneer shall reasonably determine in good
faith, whether any bidder is a Qualified Bidder.  New York Community Bank
("NYCB"), the holder of the first mortgage on the premises is deemed a

---

[6] The Debtors hereby expressly reserve their rights to object to the NYCB Note on any and all available grounds,
including, without limitation, its amount, merits and timing of payment.

Qualified Bidder and has the right, but not the obligation to credit bid the value of its mortgage, without complying with the qualification requirements noted above.

(d)     **Breach Of The Agreement Of Sale**: The Deposit will be forfeited as liquidated damages and the Successful Bidder held liable for compensatory damages if the Successful Bidder fails to close by reason of its breach of the Agreement of Sale.

(e)     **No Contingent Bids:** Bids may not be subject to financing, due diligence, zoning, environmental or any other contingency except the entry of an order of this Court approving the sale pursuant to section 363(b) of the Bankruptcy Code.

(f)     **The Auction Format:** All bidding is open and public.  To bid during the Auction, a Bidder need only raise their hand, shout out their bid or instruct an auctioneer's bidder assistant to call out a bid on behalf of the Bidder.

(g)     **Bidding at the Auction:**

    (i)     After the initial opening Bid, all subsequent competing Bids shall be in increments at the direction and discretion of the Auctioneer. No Bid shall be of the same amount as any existing Bid.

    (ii)    Auctioneer reserves the right to reopen the bidding and re-bid the property, in the event of a bidding dispute occurring at the Auction.

    (iii)   Auctioneer reserves the right to determine with whom the Bid is placed in the event of a tie or dispute.

    (iv)    Oral and written announcements made by the Auctioneer before the commencement of the bidding take precedent over any previously distributed materials.

    (v)     Bids made after the bidding is concluded at the Auction will not be considered by the Court.

(h)     **Additional Requirements Of The Successful Bidder:** The Successful Bidder will also be required to sign the bidder's card upon the conclusion of bidding, acknowledging the purchase and tender the required certified or cashier's check as initial down payment to the Auctioneer's assistant.  The Successful Bidder shall then immediately sign the Agreement of Sale and the escrowee shall deposit the initial down-payment. The initial down payment MUST be increased to 10% of the Total Purchase Price by cashier's or certified check, if applicable, either at the auction or within two (2) business days following the auction.  No third party checks will be accepted.   The Successful Bidder may also be asked to sign a statement that the Bidder has

9

inspected the Property and other documents. If the agreement is to be signed with the purchaser being a corporation or partnership or trust, there are additional bidding requirements and the Bidder should contact Sheldon Good to discuss these requirements in advance of the Auction.

(i)     **Appearance at Auction:**  All Qualified Bidders must appear in person or via telephone or through a duly authorized representative or by submitting a bid prior to the auction to be entered into the bidding at the Auction.

(j)     **Jurisdiction of Court:**  The Auctioneer shall conduct this sale for and as directed by the Court for the benefit of the parties. The Auctioneer, all bidders and their brokers or representatives are deemed to have submitted to the exclusive jurisdiction of the Court with respect to any dispute relating to all matters related to the Auction and all terms and conditions of the transfer of the Property.

(k)     **Successful Bidder Default:**  If any successful bidder fails to close the sale contemplated herein, it will be liable for and forfeit the Deposit.

(l)     **Closing:**  The closing of the sale(s) pursuant to the Auction (the "Closing") shall take place in accordance with the terms of the Agreement of Sale.

(m)     **Bankruptcy Court Approval:**  The sale of the Property contemplated herein shall be subject to the entry of an order, or orders as the case may be, by the Court: (a) approving the sale and transfer of the Property; and (b) containing a finding that the Successful Bidder(s) is (are) a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.

(n)     **Absolute Offerings:**  The final high bids that are offered on the Property are absolute, without reserve, will be accepted at the time and place of the Auction, subject only to the approval of the United States Bankruptcy Court District of New Jersey. The institutional secured creditors have the right, but not the obligation, to bid in accordance with the order entered by this Court regarding the Bidding Procedures.

(o)     **The Sale Hearing:**  A hearing to confirm the results of the Auction, if any, and/or to approve the sale of the Property will be held before The Honorable Morris Stern, United States Bankruptcy Judge, at the Martin Luther King Jr., Federal Building & Courthouse, Newark, New Jersey 07101, on _____, 2010, at 10:00 a.m. (E.S.T.) (the "Sale Hearing") or as soon there after as practically possible.

(p)     **Modifications:**  The Debtor reserves the right to: (i) impose additional or different terms and conditions at or before the Auction, (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction and/or the Sale Hearing in open court without further notice, and (iii) withdraw the Property from the Auction. In addition, the Debtor may at any time, in its sole discretion, reject any and all Bids that are not Qualified Bids.

(q)    **Credit Bid:** NYCB shall be permitted to credit bid pursuant to section 363(k) of the Bankruptcy Code. NYCB is deemed a Qualified Bidder and shall be exempt from the Qualification requirements, as set forth above, so long as such credit bid otherwise constitutes a Qualified Bid.

(r)    **Buyer's Premium:** In addition to the final High Bid Price the Successful Bidder will pay a premium (the "Buyer's Premium") equal to seven percent (7%) of the High Bid Price. This amount shall be added to the final bid and inserted in the Agreement of Sale to determine the Total Purchase Price.

(s)    **Realtor®/Broker Participation Invited:** A referral fee of 1% (one percent) of the high bid will be paid by the auctioneer to the real estate broker, acting as a "Buyer Broker" whose client pays and closes on the Property. To qualify for the referral fee, the real estate agent must: (a) be a licensed real estate broker in the state in which the property is located who will abide by the National Association of Realtors® Code of Ethics; (b) register the client by certified mail, return receipt requested, on company stationery, which must be signed by both the broker and the client and confirm the Buyer Broker arrangement, with Sheldon Good and Company, A Racebrook Portfolio Company, 635 Madison Avenue, Suite 1203, New York, NY 10022, Attention: Project Manager, received no later than three (3) business days prior to the auction date; (c) ensure that the registration letter is received before any inspection of the property by the client; and (d) sign in and inspect the property with the client during a scheduled site inspection; (e) attend the Auction with the client and bid with or for the client. All registrations accepted will be acknowledged; each acknowledged broker must bring his or her registration acknowledgment to an open house and to the auction for registration verification purposes. A complete registration file on all prospects will be maintained. No REALTOR®/Broker will be recognized for a client who has previously contacted or been contacted by the Seller or its representatives or the auctioneer. Referral fees will be paid upon closing by the auctioneer from the commissions received by auctioneer . Referral fees are based on the high bid amount (not including the Buyer's Premium). No referral fees will be paid by the auctioneer if the broker, the broker's agents or a member of the broker's immediate family is participating in the purchase of the property or is an employee or partner of the client. An affidavit will be required certifying that the agent is serving only as a broker and not as a principal. There can be NO EXCEPTIONS to this procedure and no oral registrations will be accepted. Realtors®/Brokers are hereby notified that the Seller has provided a dual commission arrangement for the sale of this property in this offering. If a broker has not met all of these requirements, no referral fee will be paid to the broker, even if the broker's client purchases the property.

(t)    **Documents Available:** A bidder's information packet (the "Packet") has been assembled and may include such items as detailed the Auction information, property description, legal description, the Agreement of Sale,

preliminary title examination report, operating costs, detailed property information, rent roll, leases, environmental and other third party reports, real estate tax bill, local zoning information, local market information, survey, terms of sale, bidder's affidavit and other applicable information. The Packet is available for purchase via telephone fax order or mail from Sheldon Good, at the on-site inspections or at the Auction. The Packet may be reviewed at any on-site inspection. The purchase of a Packet is required prior to registering to bid at the Auction. The Seller, the Seller's broker and auctioneer shall not be liable for any inaccuracy contained in any reports furnished to buyers originating from third party experts.

(u)    **Attorney Review Recommended:** All information contained in auction-related material, such as Packet, should be carefully reviewed by a Bidder's attorney prior to the Auction and is subject to and may be superseded by the Agreement of Sale and announcements made from the podium prior to the commencement of bidding.

(v)    **Conduct Of The Auction:** Neither the Seller, the Seller's agents nor auctioneer are permitted to bid at the Auction. However, the secured creditors have the right but not the obligation to bid at the Auction under any order entered by this Court on the Bidding Procedures. Conduct of the auction and increments of bidding are at the direction and discretion of the auctioneer. The Seller and the auctioneer reserve the right to refuse admittance to or expel anyone from the auction premises for interference with auction activities, nuisance, canvassing, soliciting, or other reasons deemed necessary by the auctioneer. In the event of a dispute between bidders, the auctioneer shall make the final decision to accept the final bid, to re-offer and re-sell the property, or to remove the property from the auction. If any disputes should arise following the auction, the Auctioneer's records shall be conclusive in all respects.

(w)    **Disclaimer:** Each Bidder, by submitting a Bid for the Property, shall be deemed to acknowledge and represent:

- that it is bound by the Bidding Procedures contained herein;

- that it had an opportunity to inspect and examine the Property and to review all pertinent documents and information with respect to the Property prior to making its offer and that it relied solely on that review and upon its own investigation, own independent review, investigation and/or inspection of any documents and/or the Property in making its Bid; and

- that it did not rely upon any written or oral statements, warranties or representatives of the Debtor, or the Debtor's agents regarding the Property, or the completeness of any information provided in connection with the Property, the bidding process or the Auction.

30.    The Debtor believes that establishing the procedures described above for bidding on the Property will allow it to promptly review, analyze and compare all bids received and determine if a bid or bids are in the best interests of the bankruptcy estate of the Debtor.

## APPLICABLE LEGAL AUTHORITY

**A.    The Debtor Should Be Authorized To Sell The Property Pursuant To The Procedures Contained Herein Because The Debtor Is Selling The Property To A Good Faith Buyer For A Sound Business Purpose**

31.    The Debtor respectfully submits that it should be authorized to sell the Property subject to higher and better offers.

32.    Section 363(b)(l) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(l); *see also* Fed. R. Bankr. P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction).  A debtor-in-possession is given these rights by section 1107(a) of the Bankruptcy Code.  Moreover, section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

33.    Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in the Third Circuit have found that a sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business judgment exists for such a sale.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (applying the "sound business purpose test" set forth in *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983)).

34.    Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale;

(b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *Del. & Hudson Ry.,* 124 B.R. at 176; *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D.Pa. 1991).

**(1)      A Sound Business Justification Exists For The Sale Of The Property**

35.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of the assets for the debtor's estate and its creditors.  *See In re Lionel Corp.,* 722 F.2d at 1071.

36.    Courts have developed the following non-exclusive list of factors to consider in determining whether a sound business purpose exists:

- Sound business reason for the sale;

- Accurate and reasonable notice;

- Proportionate value of the asset to the estate as a whole (fair and reasonable);

- The amount of elapsed time since the filing;

- The likelihood that a plan of reorganization will be proposed and confirmed in the near future;

- The effect of the proposed disposition on the future plan;

- The amount of proceeds to be obtained from the sale versus the appraised value of the property sold; and

- Whether the asset is decreasing or increasing in value.

*Lionel,* 722 F.2d at 1071; *Delaware & Hudson Railway*, 124 B.R. at 176.

37.    Courts have made clear that a debtor's showing of a sound business justification does not have to be unduly exhaustive.  Rather, a debtor is "simply required to justify the

proposed disposition with sound business reason . . . ." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Moreover, the paramount goal in any proposed sale of property of the estate is to maximize the value received by the estate. *See In re Food Barn Stores, Inc.,* 107 F.3d at 564-65 (8th Cir. 1997)(stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. 650, 659 (S.D.N.Y. 1992)("It is a well-established principle of bankruptcy law that the. . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (quoting *In re Atlanta Packaging Prods., Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

38.    There is more than adequate business justification to sell the Property. Based upon an analysis of the Debtor's ongoing and future business prospects, the Debtor's management, and financial advisors believe that the sale of the Property, pursuant to the terms and conditions set forth herein, is in the best interests of the estate. Accordingly, as set forth herein, the proposed sale is supported by sound business reasons.

**(2)    The Debtor Is Providing Adequate Notice Of The Sale**

39.    In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1). Bankruptcy Rule 6004 further provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a). Pursuant to Bankruptcy Rule 2002(a)(2) this Bankruptcy Court may, for cause shown, shorten or direct another method of giving notice regarding the general twenty-day-by-mail period for the proposed use, sale, or lease of the estate's property

outside the ordinary course of business. Fed. R. Bankr. P. 2002(a)(2).  Pursuant to Bankruptcy

Rule 2002(c)(1), the notice of the proposed use, sale, or lease of property required under

Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and

conditions of any private sale, and the time fixed for filing objections.  Fed. R. Bankr. P.

2002(c)(1).  Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it

generally describes the property.  *Id.*

40.    The proposed timing of the hearing to consider the Sale (the "Sale Hearing") is well

within the notice procedures mandated by the Bankruptcy Rules.  Here, the form and manner of

the notice of Motion and the procedures used for soliciting higher and better offers for the

Property have been submitted for approval by this Court and will ensure that any and all

interested parties will receive adequate notice of the Auction.   Accordingly, the Debtor submits

that the notices, procedures, and rules set forth in this Motion satisfy the notice requirements of

the Bankruptcy Rules and section 363(b) of the Bankruptcy Code, constitute good and sufficient

notice, and that no other or further notice is required.

**(3)     The Property Will Be Sold for Fair Value**

41.    Courts will only approve section 363(b) sales if the debtor has obtained a fair and

reasonable price for the assets.  *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D.

Del. 1991); *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.,* 77 B.R. 15,

20-22 (Bankr. E.D. Pa. 1987).

42.    At the Sale Hearing, the Debtor will demonstrate that the Successful Bidder bought

the Property for "value."   At a minimum, because the sale of the Property will have been the

subject of marketing and higher and better bids both before and at the Auction, the Debtor is

confident that the Property's value will be maximized.

**(4)      The Good Faith Buyer Requirement**

43.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Third Circuit

has construed the "good faith buyer" standard to mean one who purchases "in good faith" and for

"value."  *See In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147, 149-50 (3d Cir.

1986).

> The requirement that a purchaser act in good faith speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

*Abbots,* 788 F.2d at 147 (citing *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1197-

1198 (7th Cir. 1978)).

44.    Here, all negotiations have been at arms length, and the parties have at all times

acted in good faith.

45.    As set forth above, in the event that there are Qualified Bidders, the Debtor will

select the highest and best offer.  Courts have indicated that a party must show fraud or collusion

between a purchaser and the debtor or trustee in order to demonstrate a lack of good faith.

*Abbotts Dairies*, 788 F.2d at 147.  In light of the Debtor's marketing efforts, the open sale

process and the fact that under the Bidding Procedures each Qualified Bidder is deemed to

acknowledge that it is not an insider of the Debtor, nothing here suggests any fraud or collusion.

Accordingly, the Debtor requests that this Court make a finding that any Purchaser submitting a higher and better offer will be purchasing the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code and, thus, entitled to the protections set forth therein.

**B.**    **The Debtor Should Be Authorized To Sell The Property And Clear Of All Liens Pursuant To Section 363(f) Of The Bankruptcy Code**

46.    In accordance with section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(i)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

(iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv)    such interest is in *bona fide* dispute; or

(v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of the Property.  *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 257 (3d. Cir. 2000) (discussing how section 363(f) of the Bankruptcy Code authorizes the sale of a debtor's assets free and clear of all liens, claims and interests if "any one of [the] five prescribed conditions" is met); *In re Kelistrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del. 2002) (stating that a court may approve a sale "free and clear" provided at least one of the subsections of section 363(f) is met); *see also DVI, Inc.,* 306 B.R. 496, 503 (Bankr. D. Del. 2004).

47.    A sale free and clear of liens, claims, interests, options, and encumbrances (with the

exception of real estate taxes) is necessary to maximize the value of the Property.  Here, the lien

held by NYCB represents a significant encumbrance.  Pending the Debtor's compliance with one

of the above factors, the Debtor should be authorized to sell the Property, and any and all liens

asserted against the Property.

48.    Here, NYCB has consented to the sale of the Property and its lien shall be satisfied

at the closing on the sale of the Property.

49.    Based upon the foregoing, the Debtor requests this Court permit the sale process to

move forward.

**C.**    **Waiver Of Ten Day Stay Under Bankruptcy Rule 6004(h)**

50.    Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders

authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for ten days after entry of such order, "unless the court orders otherwise."

*See* Fed. R. Bankr. P. 6004(h).

51.    Waiving the ten day stay under Bankruptcy Rule 6004(h) is necessary to permit the

Debtor to minimize these costs by closing the proposed the sale transaction as soon as possible

after the entry of the Sale Order.

**NOTICE**

52.    Notice of this Motion has been given to: (1) the United States Trustee for the

District of New Jersey; (2) counsel for Debtor's secured lenders; (3) all parties that timely have

requested notice in these cases; and (4) all entities known to have expressed a *bona fide* interest

in acquiring the Property.  In light of the nature of the relief requested herein, the Debtor submits

that no other or further notice is required.

### NO PRIOR REQUEST

53.    No previous motion for the relief sought herein has been made to this or to any other court.

### WAIVER OF BRIEF

54.    As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, Debtor respectfully requests that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

### CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Procedures Order and, subsequently, the Sale Order; and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**TRENK, DIPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
*Attorneys for Debtors and
Debtors-in-Possession*

By:___ */s/ Richard D. Trenk*_____
RICHARD D. TRENK

Dated:  December 22, 2009

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 1746</u>

I, **DAVID CONNOLLY**, hereby verify that the foregoing statements are true and correct
to the best of my knowledge and belief.


DATED:  December 21, 2009                                    <u>    /s/ *David Connolly*    </u>
                                                             DAVID CONNOLLY

F:\WPDOCS\A-M\Connolly Properties\Carteret Arms\Carteret Arms 363 Motion (v - 2).doc